IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| BOB L. BOREN,  KIM D. PADDOCK, | ) | |
| Plaintiffs, | ) | |
| v. | ) | |
| THE CITY OF NAMPA<br>THE NAMPA CITY POLICE DEPARTMENT<br>HAMILTON, MICHAELSON & HILTY, LLP<br>BRYAN K. WALKER, NAMPA CITY<br>MISDEMEANOR PROSECUTOR,<br>BOTH PROFESSIONALLY AND<br>PERSONALLY, ROBERT HOBBS, ASSISTANT<br>PLANNING DIRECTOR FOR THE CITY OF<br>NAMPA, BOTH PROFESSIONALLY AND<br>PERSONALLY, JAY YOUNG, CITY OF<br>NAMPA CODE ENFORCEMENT OFFICER,<br>BOTH PROFESSIONALLY AND<br>PERSONALLY, SGT. JOSEPH HUFF, NAMPA<br>CITY POLICE DEPARTMENT, BOTH<br>PROFESSIONALLY AND PEROSNALLY,<br>CPL. CHRIS ROWE, NAMPA CITY POLICE<br>DEPARTMENT, BOTH  PROFESSIONALLY<br>AND PERSONALLY, OFFICER VAL BRISBAN,<br>NAMPA CITY POLICE DEPARTMENT, BOTH<br>PROFESSIONALLY AND PERSONALLY,<br>DOES 1-50, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. CIV 04-084-S-MHW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |
| Defendants. | ) | |

## <u>INTRODUCTION</u>

Currently pending before the Court is Defendants' Motion for Summary Judgment (docket # 34), filed November 21, 2005. The Court finds that the decisional process would not be assisted by oral argument, therefore the motion will be decided on the written submissions. Having reviewed all of the affidavits and memorandums, the Motion for Summary Judgment will be granted.     The Plaintiffs assert in their Third Amended Complaint ("Complaint"), that the conduct of the remaining Defendants have violated their federally protected constitutional rights, the Idaho Human Rights Act, Idaho Code § 6-903, *et seq*., and Article 1 of the Idaho Constitution.  The genesis of this litigation is a long-running dispute between Plaintiff Kim Paddock ("Paddock") and the City of Nampa ("City") over a zoning dispute on a parcel of property that Paddock owned.  Paddock operated a business known as Supertech Automotive LLC from this property in an area zoned for residential use.  The City took the position that Paddock was operating a automobile repair/salvage operation in violation of the zoning restrictions.

Included in the Complaint is a matter not directly related to the zoning dispute, other than it occurred on the same property, where citations for child neglect, possession of drug paraphernalia and indecent exposure were issued to Plaintiff Bob Boren ("Boren") by officers employed by the Nampa City Police Department after they were requested to go to the property by Child Protective Services.  Boren eventually entered a plea of guilty to the citation for possession of drug paraphernalia.

The Defendants can be grouped as follows: 1) the City of Nampa and two of its employees who work in the City's Planning and Zoning Department, Robert Hobbs ("Hobbs"),

the Assistant Planning Director and Jay Young ("Young"), a Code Enforcement Officer, 2) the law firm of Hamilton, Michaelson & Hilty, LLP, and a member of that firm, Bryan Walker ("Walker"), the designated Nampa City Prosecutor who contracts to provide prosecutorial services for the City of Nampa, and 3) the Nampa City Police Department and officers Sergeant Joseph Huff ("Huff"), Corporal Chris Rowe ("Rowe"), and Officer Val Brisbin ("Brisbin").  All of the individual Defendants are sued in their official and individual capacities.

The Plaintiffs' Complaint is basically a narrative rendition of the wrongs they believe they have suffered at the hands of the Defendants and does not set forth separate causes of actions.  The Court accepts the Defendants' summary of the causes of actions they believe are alleged in the Complaint as follows:

1. Cause of action under 42 U.S.C. § 1983 for a violation of the Fourth Amendment (illegal searches).

2. Cause of action under 42 U.S.C. § 1983 for a violation of the Eight Amendment (cruel and unusual punishment).

3. State law claims of false arrest and malicious prosecution.

4. State law claim for violation of Article 1 of the State of Idaho Constitution.

The Defendants have moved for summary judgment on all of the Defendants' causes of action on the following grounds:

1. The state law claims must be dismissed for failure of the Plaintiffs to file a Notice of Tort Claim as prescribed by Idaho Code § 6-906.

2. The claims against the individual police officers must be dismissed because the Plaintiffs did not file a bond as required by Idaho Code § 6-610.

3. Plaintiffs allegations of abuse of process and malicious prosecution fail to state a claim and are barred by Idaho Code § 6-904.

4. The claims against the Nampa Prosecuting Attorney are barred by the doctrine

of absolute immunity.

5.  There have been no violations of the Fourth or Eighth Amendments to the U.S.
    Constitution.

6.  No private cause of action exists under Article 1 of the State of Idaho Constitution.

# I.
# Background.

Plaintiffs Paddock and Boren are residents of 604 North Sugar Street (hereinafter "property"), Nampa, Idaho.  As mentioned, Paddock wanted the City to approve her business of selling renovated cars from her property that was zoned for residential use.  Paddock had several cars on her property and the City contended that she was operating an illegal repair/salvage operation in violation of the City's zoning laws.  This led to the filing on criminal charges against Paddock by Defendant Walker as the City's prosecutor.

Defendant Young apparently did not accurately calendar the date of the trial, which was February 19, 2002.  Walker dismissed the case that day because of the unavailability of witnesses.  Young did not know the case had been dismissed, and on February 20, 2002,  he visited the property for the purposes of taking pictures of the automobiles on the property for possible use at the trial.  Young drove up the drive way to take the pictures but did not get out of his car.  Young's visit was to determine if Paddock had come into compliance with Nampa City codes.  Plaintiffs contend that Young's actions on February 20, 2002, constituted an illegal search under the Fourth Amendment of the United States Constitution.

The incident unrelated to the zoning dispute occurred on May 13, 2003 and involved the five year old son of Plaintiff Boren, Buck L. Boren.  At about 2:51 p.m., Nampa dispatch received a call from Child Protection Services ("CPS") stating that a minor was home alone at

at 604 North Sugar Street, Nampa, Idaho.[1] (Rowe Aff., ¶ 2.)  Officers Huff and Rowe responded

to the residence at 2:57 pm. (Rowe Aff., ¶  2.)  After knocking on the door and receiving no

answer, Huff and Rowe walked around the house to the garage where they saw Boren sitting in a

garage. (Huff Aff., ¶ 4,5.) (Rowe Aff., ¶ 3.)  A pipe and some marijuana were in plain view next

to Boren. (Huff Aff.,¶ 6.)   Finding marijuana prompted Huff and Rowe to search the residence

for more drugs. *Id.* at 8.  It is disputed whether Boren consented to the police search of the

residence. Boren asserts that he never consented to the search of the property.[2]  Huff and Rowe

swear that Boren consented to search and told them of the location of other marijuana and

paraphernalia on the property. (Huff Aff., ¶  8.)(Rowe Aff., ¶ 5.)  Boren was placed in handcuffs

for safety for 40 minutes to an hour,  while police conducted a search of the property. (Huff Aff.,

¶ 11.)( Rowe Aff., ¶ 5.)

During the search, Huff located Buck Boren, alone and unattended inside the residence.

While police searched the residence, Plaintiffs allege that the child was allowed to roam free on

the property outside. (Complaint ¶  3.)  Paddock contends this greatly endangered the child and

constituted negligence.  *Id.*  Three citations were issued to Boren for Child Neglect, Possession of

Paraphernalia, and Indecent Exposure. (Huff Aff., ¶ 10.)  Rather than arresting Boren and taking

---

[1]Paddock alleges conspiracy between person(s)and agencies regarding the events leading up to the May 13, 2003, call to Nampa dispatch. ( Complaint, ¶ 6.) Plaintiffs' contend the call CPS received came from a Shucks Auto Supply where the Plaintiffs had never done business. *Id.*  A review of phone records from the Nampa residence shows phone numbers from the day of the search, one of which was an unlisted government number. *Id.* When Paddock called this number a woman named Michael Ann answered and claimed that the call came from the lobby of Nampa Health and Welfare. *Id.* Buck Boren told Paddock that a woman had called and told him to dial 911 on the day of the search. *Id.* Buck Boren did not call 911. *Id.*  Paddock maintains that when she called to verify the 911 call from dispatch, dispatch informed her no call was ever made. *Id.*

[2]Boren's contention is not submitted in an affidavit.

**Memorandum Decision and Order - Page 5**

him into custody, Boren was allowed to appear by summons.  Plaintiffs contend these actions constituted false arrest, negligence, illegal and unlawful threats, and illegal search and seizure.[3]

Next, Plaintiffs alleged that on September 2, 2003, Officer Brisban of the Nampa Police Department and  Hobbs, Assistant Planning Director for the City of Nampa Planning and Zoning Department, unlawfully searched the property.  (Complaint, ¶  7.)  The September 2, search was conducted pursuant to a warrant issued that day by a state magistrate judge.  (Brisban, Aff., ¶ 2.)  The search was conducted while Boren was present.  Paddock arrived shortly after the search had begun.  As part of the search, Brisban required Paddock to start numerous vehicles on the property, despite her objections that the vehicles were not within the scope of the search warrant.  Plaintiffs contend that the warrant lacked specificity, violated due process, was altered by unknown persons prior to being served, and was executed prior to service of the warrant.  (Complaint, ¶ 7.)

In addition, Paddock alleged Nampa City Prosecutor Walker and Hobbs threatened her with jail, civil injunction, and/or civil abatement, despite her "good faith" attempts to comply with City codes.  *Id.* at ¶ 8.  Paddock maintained she was maliciously prosecuted and prevented access to storage facilities within Nampa, which inhibited her compliance with the Nampa City Codes. *Id.* at ¶10.

---

[3]Boren's Motion to Suppress was denied. (Complaint, ¶ 5.)  Boren additionally claimed that the Honorable Todd M. Joyner, Magistrate Judge, told Boren that if he pursued his misdemeanor crimes before a jury, he would sentence Boren six months in jail, thereby forcing Boren to plead guilty to one misdemeanor count for possession of drug paraphernalia. *Id.* at ¶ 5. Boren alleged that the Judge Joyner denied due process and used "fruit from the poisonous tree" to falsely arrest Boren.  *Id.*

Plaintiffs assert that because of "overbearing mental stress" caused by the Defendants, they were forced to move out of Nampa and give up their proposed shop and business. As a result, the Plaintiffs seek monetary damages upwards of $8,000,000.

## II.
## Standard of Review.

When reviewing a motion for summary judgment, the proper inquiry is whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (1993). A moving party who does not bear the burden of proof at trial may show that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the non-moving party's case." *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remains or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). It is not enough for the [non-moving] party to "rest on mere allegations of denials of his pleadings." *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

"When determining if a genuine factual issue . . . exists, . . . a trial judge must bear in mind the actual quantum and quality of proof necessary to support liability." *Id*. at 249-250. The mere existence of a scintilla of evidence in support a defendant's position will be insufficient as there must be evidence from which the jury could reasonably find for the defendant. *Id.*

In determining whether a material fact exists, facts and inferences must be viewed most favorably to the non-moving party.  To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law. *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 591 (9th. Cir. 1981).

The Ninth Circuit recently emphasized that summary judgment may not be avoided merely because there is some purported factual dispute, but only when there is a "genuine issue of material fact."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992).

> In order to withstand a motion for summary judgment, the non-moving party (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*British Motor Car Distrib. Ltd. v. San Francisco Automotive Indus. Welfare Fund*, 882 F.2d 371 (9th Cir. 1989).

## III.
## Discussion

### A. Plaintiffs' Federal Constitutional Claims

#### 1. Fourth Amendment Claims

Plaintiffs assert Defendants violated the Fourth Amendment by illegally searching their property.  Violations allegedly occurred on February 20, 2002, May 13, 2003, and September 2, 2003. (Complaint, ¶ ¶ 1,7,8,10,11,12 and 13.)

#### a)  February 20, 2002 "incident."

The Fourth Amendment protects persons from unreasonable searches.  *Coolidge v. New Hampshire*, 403 U.S. 443, 510-11 (1971) (Black, J., concurring and dissenting).  "The test in each

case should be that of reasonableness, both of the land possessor's expectations of privacy and of the officers' reasons for being on the property." *United States v. Jacobson*, 647 F.2d 990, 992-93 (9th Cir. 1981).  Put another way,  "Reasonableness...under the Fourth Amendment is determined by assessing, on one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate government interests." *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999).  "The Fourth Amendment only protects those areas in which a person has exhibited an actual (subjective) expectation of privacy and that expectation of privacy is one that society is prepared to recognize as reasonable."  *Katz v United States*, 389 U.S. 347, 361-62 (1967) (Harlan, J., concurring). "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Id.* at 351.  The Fourth Amendment has never been translated into a general constitutional 'right of privacy'  *Id.* at 350.

There is no recognized rule of law that all driveways are protected by the Fourth Amendment. *United States v. Magana*, 512 F.2d 1169, 1171 (9th Cir. 1975).  Nor is it the rule that driveways are not protected.  *Id*.  As stated above, the test is one of reasonableness. *Jacobson* at 992-93.  The proper inquiry is whether the officers' intrusion into the residential driveway constituted an invasion into "what the resident seeks to preserve as private even in an area which, although adjacent to his home, is accessible to the public." *Wattenburg v. United States*, 388 F.2d 853, 857 (9th Cir. 1968).

The facts are not in dispute regarding the February 20, 2002 incident.  Defendant Young entered upon the property without permission or search warrant. (Young Aff. ¶ 9.).  The issue is whether the intrusion was "unreasonable" under the Fourth Amendment.  Reasonableness is assessed by evaluating three elements; 1) the actual (subjective) expectation of privacy of

Paddock, 2) Young's reasons for entering the property, and 3) whether society recognizes that it is reasonable to expect privacy for this driveway.

Paddock had an expectation of privacy, at least to a portion of her property. She posted "No Trespassing" signs and installed a screening fence.[4]  Young had a legitimate governmental interest for entering Paddock's property. Paddock had been warned by the Zoning Department and by the Nampa City Prosecutor on numerous occasions. (Young Aff. ¶  2,3,5,6,7.) She was given multiple opportunities to comply with the City codes. Young's job entails enforcement and investigation of violations of Nampa City code. (Young Aff. ¶ 1.)  Code enforcement officers routinely visit property prior to hearings and trials to determine whether the resident is in compliance. (Young Aff. ¶ 10.)  Young was acting within the scope of his employment and effectuating enforcement of Nampa City codes.

Examining the facts and circumstances surrounding the February 20, 2002 incident, Paddock's expectation of privacy was not reasonable.  This court can find no basis for extending Fourth Amendment protection to include the open and accessible driveway on Paddock's property.[5]  Driveways are semi-private areas upon which the public and government have access for legitimate enforcement purposes, *e.g.,* safety and mail delivery.

The vehicles subject of the investigation were in plain view of the public and other neighboring properties. (Young Aff. ¶ 10.)  Additionally, there was nothing, such as a locked gate, to prevent anyone from entering the driveway. (*Id.* at ¶ 9.)  Plaintiff made no effort to

---

[4] The screening fence surrounding the property was erected as an attempt to comply with applicable zoning laws. (Young's Aff. ¶ 9.)Plaintiffs' Affidavit contains a letter from Paddock to "All Public Officials" adamantly warning them not to enter her property or they will be sued under "a 1983 Federal Action." (Bosworth Aff. Exhibit X.) However, this letter is dated September 8, 2003, more than a year after the February 2002 "search."

[5] The open driveway which Young entered was accessible from a public street and the subject cars photographed were visible from the street and adjoining properties. (Young Aff., ¶ 9,10.)

**Memorandum Decision and Order - Page 10**

prevent persons from entering their driveway, except for "No Trespassing" signs.  However, the

Supreme Court has found that "the general rights of property protected by the common law of

trespass have little or no relevance to the applicability of the Fourth Amendment." *Oliver v*

*United States*, 466 U.S. 170, 183-84 (1984). The Fourth Amendment is not a general protection of

the "right of privacy." *Katz,* 389 U.S. at 350.

The facts involving Young's conduct on February 20, 2002, are not in dispute.  When

these facts are applied to well-established law, there was no unreasonable search in violation of

the Fourth Amendment.  Furthermore, Young would be entitled to qualified immunity.  Assuming

*arguendo* that driving down a drive way would in some manner be an unconstitutional search, it

certainly was not clearly established law.

Qualified immunity serves government officials acting within the course of performing the

discretionary duties of the offices by barring civil liability damages, so long as the conduct "does

not violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S.

800, 818 (1982).  If the court finds that a constitutional violation has occurred, then it must

determine whether the violated right was clearly established, and whether a reasonable public

official could have believed that the conduct at issue was lawful.  *Harlow*, 457 U.S. at 819.

Assuming a constitutional violation has occurred, which the Defendants specifically deny

and this Court agrees, the violated right was not clearly established and a reasonable public

official in Young's position would not have believed that his conduct was unlawful.  *Id*.   As

stated above, there is no recognized rule of law that all driveways are protected by the Fourth

Amendment.  *Magana*, 512 F.2d at 1169.  Nor is it the rule that driveways are not protected.  *Id*.

The law for establishing whether a driveway, like the driveway here, is protected by the Fourth

Amendment is not clearly established. "The relevant, dispositive inquiry in determining whether a

**Memorandum Decision and Order - Page 11**

right is clearly established is whether it would be clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 553 U.S. 194, 202 (2001).

A reasonable public official in Young's position would have believed that intrusion onto the property was lawful. The Planning and Zoning Department conducts visual inspections of property involved in lawsuit from the City prior to court dates. Young had before been permitted to enter the property and had never been told that he was not permitted to enter the property again. Absent an clear directive by the courts, a reasonable code enforcement officer could have believed he was allowed, both by his position as a code enforcement officer and by the Plaintiffs, to enter the property and that such entrance onto the property was not a "search" within the meaning of the Fourth Amendment. Therefore, assuming *arguendo* that driving down a driveway would in some manner be an unconstitutional search, this court finds that Young would be entitled to qualified immunity.

### b) May 13, 2003 "search"

Plaintiffs allege that the search of their property, which resulted in the filing of criminal charges against Boren, violated the Fourth Amendment.[6] The Fourth Amendment generally prohibits the warrantless non-consensual search of a person's home. *Payton v. New York*, 445 U.S. 573, 576 (1980). However, consent is an exception to the Fourth Amendment's warrant requirement. *Id.* This consent can be given from the individual whose property is being searched or from a third person who possesses common authority over the premises. *Illinois v. Rodriquez*, 497 U.S. 177, 181 (1990).

---

[6] Boren's § 1983 action is also barred on other grounds. " A § 1983 action alleging illegal search and seizure of evidence upon which criminal charges are based does not accrue until the criminal charges have been dismissed or the conviction has been overturned." *Harvey v. Waldron*, 210 F.3d 1008, 1015 (9th Cir. 2000) (relying on *Heck v. Humphrey*, 512 U.S. 477, (1994). Boren pled guilty to Possession of Paraphernalia. That case has not been dismissed or overturned.

**Memorandum Decision and Order - Page 12**

Boren had authority to consent to search the house.  The issue here is whether voluntary consent was given by Boren to search the premises.  Both Huff and Rowe stated by affidavit that they received verbal consent from the Boren to search the house. (Huff Aff. ¶ 8.) (Rowe Aff. ¶ 5.) There are no contradicting affidavits.  The Ninth Circuit has held that " where the moving party meets the initial burden of demonstrating the absence of any genuine issue of material fact, the nonmoving party must produce 'specific facts showing that there remains a genuine factual issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc*., 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006 (1988).

As pro se litigants, the Court gave notice on March 30, 2004, to Paddock and Boren of the summary judgment requirements. (Docket #12).  This notice provides pro se litigants with the information necessary to procedurally overcome a motion for summary judgment by establishing the existence of disputed issues of material fact through the submission of proper affidavits.

Plaintiffs failed to produce any evidence refuting the sworn testimony of Huff and Rowe. Plaintiffs, "may not rest upon mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Plaintiffs have failed to present to the court any specific facts or evidence that would create a genuine issue as to a material fact.   Therefore, Defendants are entitled to summary judgment on this claim.

### c) September 2, 2003 "search"

Pursuant to an inspection of Paddock's property on or about August 1, 2003, a probable cause affidavit was filed and search warrant was issued by Idaho State Magistrate Todd M.

Joyner on September 2, 2003. (Hobbs Aff., ¶ 5.) (Walker Aff., ¶ 6, 7.)   On September 2, at about 11:30 am, Defendants Hobbs, Young, and Officer Brisban arrived at the property and started to execute the search warrant.  (Brisban Aff., ¶ 1,2.)  Plaintiffs allege the September 2, search was conducted in an unreasonable manner and exceeded the scope of the search authorized by the Judge Joyner in violation of the Fourth Amendment.

Plaintiff Boren was on the property when they arrived, and Plaintiff Paddock arrived shortly after the search warrant was being executed.  Defendant Hobbs photographed and recorded certain information during the search.  At one point, Officer Brisban directed that Paddock start vehicles on her property to determine if they were operable.  Paddock argues that requiring her to start her automobiles exceeded the scope of the warrant and was therefore unlawful.

The warrant contained the following language:

> evidence of criminal conduct, to wit: motor vehicle titling, licensing, and registration documents, license plates, keys, vehicle identification numbers, evidence of **motor vehicle salvaging and/or repair operations** such as discarded, stripped or stored motor vehicle parts and components, junk or waste (including but not limited to, used tires and batteries), and any indicia of ownership thereto or evidence that such operations are one of the primary activities on site, are located within the residence, shop or sheds thereon, and are being concealed upon the above described premises." (Walker, Exhibit C.)(Emphasis added.)

The purpose of the search was to gather evidence of continued violations of Nampa City zoning codes.  If evidence of salvaging and/or repair operations were found on the property, it could be proof zoning violations. Paddock would then be subject to possible criminal prosecution.

The only dispute is whether requiring Paddock to start the vehicles on her property was outside of the scope of the warrant.  Defendants contend that determining whether the vehicles

were operable is evidence of "salvaging or repair operations."  Further, Defendants contend that directing Paddock to start the vehicles was reasonable and well within the parameters of the search warrant.  The Court agrees.  Requiring Paddock to start the vehicles on her property was within the scope of the warrant.  Whether the vehicles would start is evidence of a salvaging and/or repair operations, which is clearly what the warrant was designed to find.  Brisban's conduct was well within the scope of the warrant and no Fourth Amendment violation occurred. Summary judgment is appropriate.

Assuming *arguendo*, that requiring Paddock to start her vehicles somehow exceeded the scope of the warrant and violated the Fourth Amendment, the Defendants would nonetheless be entitled to qualified immunity.  As discussed earlier in reference to Young's activity in driving up the driveway, qualified immunity protects state officials from personal liability for "on-the-job conduct so long as the conduct is objectively reasonable and does not violate...clearly established federal rights."  *Harlow*, 457 U.S. at 818.   The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *Saucier* 553 U.S. at 202. Because the search warrant at issue contained the language "evidence of motor vehicle salvaging and/or repair operations," a reasonable officer conducting the search could have believed that requiring Paddock to start the vehicle was within the parameters of the warrant.  Officer Brisban is entitled to qualified immunity.

### 2. Eighth Amendment Claims

Paddock asserts that the Defendants in their continued attempts to bring her into compliance with Nampa City codes violated the Eighth Amendment's ban against cruel and unusual punishment.  (Complaint, ¶ ¶ 7,8,10, 11, 12 and 13.)

**Memorandum Decision and Order - Page 15**

The Eighth Amendment only applies to and protects those already convicted of a crime. "The state does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." *United States v. Lovitt*, 328 U.S. 303, 317-18 (1946). Plaintiff Paddock was not convicted of a crime and therefore the Eighth Amendment does not apply.[7]

### 3. Prosecutorial Immunity

Plaintiffs allege that Defendants, Walker, the Nampa City Prosecuting Attorney, and his law firm, Hamilton, Michaelson and Hilty, L.L.P., have engaged in a concerted effort to intimidate, maliciously prosecute, and discriminate against the Plaintiffs. (Complaint, ¶ 17) These Defendants respond that all of their actions are entitled to absolute immunity from suit since they were carried out pursuant to their official duties as public prosecutors in an effort to bring Paddock into compliance with Nampa City Zoning ordinances and as to Boren, for possession of drug paraphernalia.

The Supreme Court of the United States in *Imbler v. Pachtman* held that a prosecutor is entitled to absolute immunity from civil action when acting within their official capacity. *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976). This immunity flows from the common law tradition of absolute immunity for judges and jurors. The policy reasons behind absolute immunity are firmly established. Here, allowing a § 1983 actions against Walker would diminish and hinder his ability to perform his role in the legal system by leaving him open and susceptible to multiple

---

[7] Boren would have potentially been the only party with a claim under the Eighth Amendment because he plead guilty to Possession of Paraphernalia. However, the Plaintiffs' Third Amended Complaint mentions nothing regarding his being subjected to cruel and unusual punishment.

**Memorandum Decision and Order - Page 16**

legal actions.  Accordingly, the Court concludes Brian K. Walker and Hamilton, Michaelson, and Hilty LLP have absolute immunity, and, therefore,  these Defendants are entitled to summary judgment.

### B. State Law Claims

#### 1. Failure To File a Notice of Tort Claim

Plaintiff bring multiple tort claims under the Idaho Tort Claims Act, Idaho Code § 6-901 *et seq.*  Plaintiffs allege negligence, discrimination, malicious prosecution, intimidation, and illegal threatening.  (Complaint ¶ 4,7, 8,9,11, 12, 13, 15.)

The Idaho Tort Claims Act § 6-906 reads as follows:

> All Claims against a political subdivision arising under the provisions of this act and all claims against an employee of a political subdivision for any act or omission of the employee within the course or scope of his employment shall be presented to and filed with the clerk or secretary of the political subdivision within one hundred and eighty days from the date the claim arose or reasonably should have been discovered, whichever is later.

Here, Plaintiffs failed to file a notice of tort claim as required by I.C. §  6-906. (Lambing Aff., ¶ 2.) The notice requirement is a condition precedent to bringing a suit under the act. *Smith v. City of Preston*, 99 Idaho 618, 586 P.2d 1062 (1978). Failure to timely file a notice of tort claim results in the barring of the Plaintiffs from pursuing state law claims against the Defendants.

#### 2. Failure to File Bond Under I.C. § 6-610

A separate basis also exists for dismissal of the claims against Defendants Walker, Huff, Rowe, and Brisbin.  I.C. § 6-610 requires as a condition precedent to the filing of this lawsuit that the Plaintiffs post a bond.  Idaho's mandatory bond statute provides as follows:

>Before any civil action may be filed against any law enforcement officer or service of civil process on any law enforcement officer, when such action arises out of, or in the course of the performance of his duty, or in any action upon bond of any such law enforcement officer, the proposed plaintiff or petitioner, as a condition precedent thereto, shall prepare and file with, and at the time of filing the complaint or petition in any such action, a written undertaking with at least two (2) sufficient sureties in an amount to be fixed by the court. The purpose of this requirement is to ensure diligent prosecution of a civil action brought against a law enforcement officer, and in the event judgment is entered against the plaintiff or petitioner, for the payment of the defendant or respondent of all cost and expenses that may be awarded against the plaintiff or petitioner, including an award of reasonable attorney's fees as determined by the court.

Defendant's Walker, Huff, Rowe and Brisban are law enforcement personnel of the state of Idaho and fall under the provisions of I.C. § 6-610.  Because mandatory bond was never posted, dismissal of the state law tort claims against Defendants Walker, Huff, Rowe and Brisban is required.

### 3. Malicious Prosecution and False Arrest

Finally, the Defendants are immune from allegations of false arrest and malicious prosecution.  I.C. § 6-904(3) provides:

>"A government entity and its employees while acting within the course and scope of their employment and without malice or criminal intent shall not be liable for any claim which ...(3) Arises out....false arrest, malicious prosecution...."

Defendant's contend and this court agrees that I.C. § 6-904(3)  precludes government liability on claims arising out of false arrest and/or malicious prosecution.  Plaintiffs assert claims of malicious prosecution, false arrest, negligence, intimidation, harassment, and discrimination in their Third Amended Complaint . The crux of these claims is Plaintiffs' theory that Defendants, specifically, Walker, Hobbs and Young, did not have an adequate basis for

pursuing prosecution for violations of Nampa City codes.  Plaintiffs asserted claims of

negligence, intimidation, harassment, and discrimination each arise out of the general claim of

malicious prosecution and false arrest.  Immunity granted under I.C. § 6-904(3) is not annulled

by Plaintiffs changing of wording for their theories upon which their claim is based.

*Intermountain Construction v. City of Ammon*, 122 Idaho 931, 841 P.2d 1082(1992).

    Additionally, Plaintiffs cannot established the essential elements of malicious

prosecution. In Idaho the malicious prosecution elements are: (1) that there was a prosecution;

(2) that it terminated in favor of the plaintiff; (3) that the defendant was the prosecutor; (4)

malice; (5) lack of probable cause; and (6) damages. *Shannahan v. Gigray*, 131 Idaho 664, 667,

962 P. 2d 1048, 1051 (1998).  Plaintiff Paddock admitted that she was in violation of the zoning

regulations and that the criminal actions against her were brought because of "inadequate efforts

to understand and comply with the law." (Walker Aff., ¶ 8.)  This alone would establish probably

cause for the prosecution.  Plaintiff Boren plead guilty to Possession of Drug Paraphernalia. The

matter did not terminate in favor of Boren. Therefore, as a matter of law the claims for malicious

prosecution and false arrest must be dismissed.

### C. Idaho State Constitution Claim

    Plaintiffs lastly assert that the Defendants, in their attempts to force compliance with

Nampa City codes violated Article I of the Idaho Constitution. (Compliant, ¶ 3.)  The Defendants

argue that the Idaho Constitution does not provide for a private cause of action for monetary

damages based on an alleged violation of person's civil liberties, arguing by way of analogy

decisions from other state court jurisdictions that have address this issue.  *See*, *Katzberg v.

Regents of the University of California*, 29 Cal.4th 300, 58 P.3d 339, 127 Cal. Rptr. 2d

482(2002). *Spurrell v. Block*, 701 P.2d 529, 535 (Wash. App. 1985).  While the Supreme Court

of Idaho has never specifically addressed this issue, the Court is confident that it would not find a private cause of action.  Summary Judgment in favor of the Defendants is therefore appropriate.

## IV.
## Conclusion.

In sum, the Court will grant summary judgment in favor of all Defendants as to each of Plaintiffs' claims under the Fourth Amendment.  The Court further concludes that the Eighth Amendment does not apply to Paddock's claims of Cruel and Unusual Punishment because she was never convicted of a crime, and, thus, Defendants are entitled to summary judgment as to this claim as well.  Moreover, the Court will dismiss all Claims under the Idaho Tort Claims Act based on Plaintiffs' failure to comply with the requirements of the Act by: (1) failing to file a tort claim  notice as required by I.C. § 6-906; (2) failing to post a bond as required by I.C. § 6-610 and; (3) not considering that claims for malicious prosecution and false arrest are prohibited absent proof of malice or criminal intent as set forth in I.C. § 6-904(3).  Lastly, Plaintiffs failed to produce legal support for their private cause of action under Article I of the Idaho State Constitution.  Accordingly, the Court will also dismiss this claim.

## <u>ORDER</u>

Based on the foregoing, the Court being otherwise fully advised in the premises, **IT IS**

**HEREBY ORDERED that** Defendant's Motion for Summary Judgment is (docket # 34), filed

November 21, 2005, is GRANTED.

DATED: August 18, 2006

_____
Honorable Mikel H. Williams
United States Magistrate Judge

**Memorandum Decision and Order - Page 21**